UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLAKE PABLOVICH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-617** |
| **ROOMS TO GO LOUISIANA CORP.** | **SECTION "L" (5)** |

**ORDER & REASONS**

Before the Court is a motion for summary judgment by Defendant Rooms to Go Louisiana Corp. ("Rooms to Go" or "RTG"), R. Doc. 51; Plaintiff Blake Pablovich's opposition thereto, R. Doc. 59; and Defendant's reply, R. Doc. 66. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.   BACKGROUND

This case arises from the collapse of a chair and the ensuing bodily injuries sustained by its occupant, Plaintiff Blake Pablovich. Plaintiff claims that on September 13, 2019, while shopping for a dining room table and chairs in a Rooms to Go store located in Gretna, Louisiana, she sat in a Sabre Springs Espresso Side Chair that collapsed, "throwing Plaintiff backwards to the floor of the store" and causing "injuries to her left arm, left shoulder, left elbow, neck, back, and head." R. Doc. 1 ¶ 5–8.

Based on the foregoing factual allegations, Plaintiff filed suit against Defendant Rooms To Go Louisiana Corp. ("Rooms to Go"), alleging that it is liable under the Louisiana Products Liability Act ("LPLA") under theories of defective construction, defective design, and lack of adequate warnings. *Id.* ¶ 10-19. Alternatively, if Defendant is not found to be a manufacturer of the Chair under the LPLA, Plaintiffs pleads negligent misrepresentation under LA. C.C. 2315. R.

1

Doc. 21 at ¶¶ 24, 25. Plaintiff seeks to recover past and future damages for medical expenses, physical pain and suffering, mental anguish, physical disfigurement, physical impairment, and loss of earnings/earning capacity. *Id.* at ¶ 32.

Defendant filed an Amended Answer generally denying liability. R. Doc. 24. Defendant argues that Plaintiff's LPLA claims must fail as a matter of law because the Defendant is not a "manufacturer" of the Chair within the meaning of the LPLA under La. R.S. § 9:2800.53. *Id.* at 2. Defendant also argues that Plaintiff's negligent misrepresentation claim under LA C.C. 2315 must fail because as the non-manufacturing seller of the Chair, Rooms to Go had no legal duty to inspect the chair for defects, and therefore, had no duty to supply "correct" information to Plaintiff about the Chair; Rooms to Go did not make any misrepresentations/omissions; and Plaintiff's injuries did not result from a justified reliance on the alleged misrepresentations/omissions. *Id.* at 1.

## II.    PRESENT MOTION

Rooms to Go now moves for summary judgment in its favor. R. Doc. 51. Rooms to Go first argues that Plaintiff's LPLA claims fail as a matter of law because RTG was not the manufacturer of the Chair, as RTG (1) is not the actual manufacturer of the Chair; (2) did not label the Chair as its own or otherwise hold itself out as the manufacturer; (3) did not exercise control over any characteristic of the design, construction, or quality of the Chair, much less the parts that Plaintiff alleges were defective; (4) did not incorporate any components or parts into the Chair; and (5) is not the alter-ego of the foreign manufacturer of the Chair. Second, RTG argues that Plaintiff's negligent misrepresentation claim must be dismissed because Plaintiff admits that no representations were made to her by RTG. Therefore, RTG argues that as the seller, not the manufacturer, it "had no legal duty to 'supply correct information' about unknown (alleged) defects in the Chair." *Id.* at 2.

In response, Plaintiff argues that summary judgment is premature because additional facts still must be determined, as the Chair had not yet been inspected by Plaintiff's product safety expert. R. Doc. 59. Plaintiff further argues that the Chair's labels, which state "Sold by R.T.G." and do not explicitly name the Chinese manufacturer, confirm RTG's status as an apparent manufacturer. Plaintiff also rejects Defendant's claim that the statement "Made in China" is sufficient to protect RTG from liability as an apparent manufacturer, citing Louisiana case law that has found a seller to manufacturer under the LPLA even when . Plaintiff does not address the fraudulent misrepresentation claim.

### III.  LAW & DISCUSSION

#### a. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated

assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### b. *Louisiana Products Liability Act*

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. § 9:2800.52; *see Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010). In other words, "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 244–45 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997). Additionally, a plaintiff may only recover from a manufacturer of the product as set forth in the LPLA. The LPLA provides that:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning, or refurbishing a product. "Manufacturer" also means:

>  (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

(d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. R.S. 9:2800.53(1)(a)-(d).

### c. Discussion

The central issue regarding Plaintiff's LPLA claim is whether Rooms to Go qualifies as a "manufacturer" of the Chair under the Act. It is undisputed that RTG was not the actual manufacturer of the Chair.[1] Rather, the parties dispute whether RTG may be liable under the apparent manufacturer doctrine as defined by the LPLA and interpretive case law.

---

1 The Chair was manufactured by Bazhou Shengfang Yuemingqi Furniture Co, Ltd. ("Bazhou Shengfang"), which is located in Bazhou City, Hebei Province, China. R. Doc. 51-1 at 3. Rooms to Go Louisiana's corporate affiliate, R.T.G. Furniture Corp., purchased the Chair from a wholesaler, Endless Gain International, Ltd. ("Endless Gain"), which presented a fully constructed model. *Id*. Rooms To Go Louisiana merely selected the colors of the chair to sell and chose name for the chairs—"Sabre Springs." R. Doc. 51-1 at 4.

The LPLA provides that a seller "who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product" qualifies as a manufacturer. La. R.S. 9:2800.53(1)(a). Accordingly, the apparent manufacturer doctrine allows a plaintiff to hold such sellers liable for injuries caused by a defect in that product where the seller leads a reasonable consumer to believe that it is the manufacturer of the product. *Meunier v. Home Depot U.S.A., Inc.*, No. 19-12141, 2021 WL 795878, at *3 (E.D. La. Mar. 2, 2021) (citing *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010)). "Generally, it takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark." *Chevron,* 604 F.3d at 896. In sum, "when the distributor's actions give the buying public a basis to assume that it may be the manufacturer of a product it distributes, a jury will usually be within its province to conclude that the distributor held itself out as the product's manufacturer, even though the indications may be less than clear and the ambiguity as to the actual manufacturer may subsequently be clarified." *Chevron*, 604 F.3d at 897.

In the present case, RTG argues that no genuine issue exists regarding the fact that it does not qualify as a manufacturer under the LPLA. RTG maintains that it was not the actual manufacturer of the Chair, which was in fact manufactured by Bazhou Shengfang in Bazhou City, China. In response, Plaintiff argues that RTG still qualifies as an apparent manufacturer under the LPLA because RTG labeled the Chair as its own and held itself out to be the Chair's manufacturer. Specifically, Plaintiff notes that the label contained no information identifying the Chinese manufacturer by name. Instead, the label fixed to the bottom of the chair[2] states that the Chair is:

    Sold By
    R.T.G.

---

2 There is a dispute between the parties regarding an orange paper tag that appears in a photograph taken at the time of the accident. R. Docs. 59 at 3; 66-1 at 3-4. The Court need not address this issue at this time because the labeling described by Defendant's corporate representative is sufficient to give rise to an issue of fact. R. Doc. 51-2 ¶ 7.

      15540 Highway 92 East
      Seffner, Florida 33584

R. Docs 51-5. The labels also indicate that the Chair is "MADE IN CHINA" and include the abbreviation "ENDG," which refers to the product's wholesaler, Endless Grain International, Ltd. *Id.* The Plaintiff argues that this labeling suggests that the Chair was made in China for sale by Rooms to Go causing RTG to become an apparent manufacturer under Louisiana law. Defendant maintains that the Chair's labels "plainly demonstrate that the Chair could not have been manufactured by Rooms To Go Louisiana" because the labels include a Florida address for Rooms to Go along with the phrase Made in China. R. Doc. 51-1 at 9.

      "Whether a holding out has occurred must be judged from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase." *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 896 (5th Cir. 2010) (quoting *Hebel v. Sherman Equip.*, 92 Ill. 2d 368, 375, 442 N.E.2d 199, 203 (1982)). Here, the Chair's labeling is ambiguous, at best. A Louisiana court has previously found that a label indicating that a product was made in China but not referencing a third-party manufacturer was sufficient to identify the seller to qualify as an apparent manufacturer for purposes of the LPLA. *Allstate Ins. Co. v. Fred's, Inc*., 44–508 (La.App. 2 Cir. 3/17/10) 33 So.3d 976, 984). In that case, the court reasoned that such labeling may suggest the seller's "involvement with the product in some capacity as it was produced in China." *Fred's, Inc.*, 33 So. 3d at 984. The court further noted there is a potential implication "that the placement of the label on the [product] occurred at the time it was manufactured in China such that [the seller's] involvement with the product extended to the time of its manufacture." *Id.* Similarly, in this case, the Court finds that the "inconclusive inferences which the purchaser might draw from the 'Made in China' label" affixed to the Chair do not foreclose RTG's apparent manufacturer status. *Id.*

7

RTG also relies on *Shapiro v. Wal–Mart* in support of its contention that the phrase "Sold by R.T.G." protects RTG from liability as an apparent manufacture. That case, however, is easily distinguishable from the present circumstances. In *Shapiro*, Court held that Target was not a manufacturer of a defective hair dryer, which had been manufactured by a third party, based on the label "Distributed by Target Stores." No. 93–3245, 1994 WL 577346, at *1–2 (E.D.La. Oct. 17, 1994). In that case, the Plaintiff alleged that she purchased the defective hair dryer from Wal-Mart (not Target), and the sole evidence regarding Target's status as a manufacturer under the LPLA was the label referencing distribution by Target. *Id.*

Louisiana courts have recognized that a statement that the product was manufactured for a seller may qualify the seller as an apparent manufacturer. *See Peterson v. G.H. Bass and Co., Inc.*, 97–2843 (La.App. 4 Cir. 5/20/98) 713 So.2d 806, 808 (holding that the trial court did not err in finding the seller to be apparent manufacturer of products despite products' labels indication that products were "Manufactured for [Defendant]"); *see also Rutherford v. Coca–Cola Bottling Co. of Shreveport, Inc.*, 501 So.2d 1082, 1085–86 (La.App.2d Cir.1987) (product indicated actual manufacturer). In another case, a price tag bearing the seller's name was enough to survive summary judgment on the claim that the hardware labeled the product as its own. *Louviere v. Ace Hardware Corp.,* 915 So.2d 999, 1002 (La. App. 3d Cir. 2005). These cases align with the prevailing common-law doctrine of apparent-manufacturer liability set forth in § 400 cmt. d of the Restatement (Second) of Torts, on which the Louisiana Supreme Court has relied:

> "The mere fact that the goods are marked with such additional words as "made for" the seller, or describe him as a distributor, particularly in the absence of a clear and distinctive designation of the real manufacturer or packer, is not sufficient to make inapplicable the [designation as apparent manufacturer].

*Media Prod. Consultants, Inc. v. Mercedes-Benz of North America, Inc.,* 262 La. 80, 90, 262 So. 2d 377, 380 (1972). Accordingly, in light of this precedent, the label "Sold by

8

R.T.G" may not absolve Rooms to Go of liability as an apparent manufacturer under the LPLA.

Ultimately, the rationale behind the apparent manufacturer doctrine "considers the perspective of the purchaser and his reliance placed upon the labeler of the product in many situations where the identity of the product's manufacturer is unclear in the sale of the product." *Allstate Ins. Co. v. Fred's, Inc.*, 44,508 (La. App. 2 Cir. 3/17/10), 33 So. 3d 976, 985. Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that there is a question of fact as to whether Rooms to Go labeled the Chair as its own or held itself out as the manufacturer under the LPLA. Thus, summary judgment is not proper and must be denied as to Plaintiff's LPLA claim.

### d. *Negligent Misrepresentation*

Plaintiff also asserts a claim for negligent misrepresentation in the alternative, if RTG is found not to be a manufacturer. To state a claim for negligent misrepresentation under Louisiana law, a plaintiff must demonstrate: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that duty; and that (3) the breach caused damages to the plaintiff. *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 439–40 (5th Cir. 2011) (citing *Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co.*, 525 So.2d 1157, 1162 (La.App. 3d Cir.1988)). Notably, the "Louisiana Supreme Court's jurisprudence has ... 'limited negligent misrepresentation tort theory to cases wherein contract or fiduciary relationship exists.'" *Id.* at 440 n.7 (quoting *Daye v. Gen. Motors Corp.,* 720 So.2d 654, 659 (La. 1998). In cases lacking privity of contract, a duty arises when the tortfeasor communicates misinformation "directly to the user or the user's agent." *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1015 (La. 1993).

Here, Plaintiff testified that Rooms to Go Louisiana did not make any affirmative representations to her regarding the chair. *See* R. Doc. 51-6, Depo. of Blake Pablovich, 17:4-18:1 and 19:15-19. Although is well-established that a duty can be "breached by omission as well as by

9

affirmative misrepresentation," there must be a duty to inform in the first place. *In re Ward*, 894 F.2d 771, 776 (5th Cir. 1990). Plaintiff as a potential buyer and RTG as the seller had no contractual relationship at the time of the incident. Moreover, Plaintiff does not allege, or provide any evidence, that RTG owed her a fiduciary duty. In fact, Plaintiff failed to address this claim altogether in her opposition motion. For these reasons, the negligent misrepresentation must be dismissed.

### IV. CONCLUSION

Considering the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, R. Doc. 51, is **GRANTED IN PART** and **DENIED IN PART.** It is **GRANTED** with respect to the claim for negligent misrepresentation. It is **DENIED** with respect to the apparent manufacturer claim under the LPLA.

New Orleans, Louisiana, this 14th day of April, 2021.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Eldon E. Fallon
　　　　　　　　　　　　　　　　　　　　　United States District Judge